IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, | * |
| Plaintiff, | * |
| v. | * Civil No. TDC-21-0358 |
| TRADEMARK ELECTRIC, INC., | * |
| Defendant. | * |

\* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") (ECF No. 14) filed by Plaintiff Trustees of the National Electrical Benefit Fund ("NEBF"). Defendant Trademark Electric, Inc. ("Trademark") has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On September 30, 2021, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6, Judge Chuang referred this case to me for a report and recommendation on NEBF's Motion. ECF No. 15. I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that NEBF's Motion be granted.

**I.   FACTUAL AND PROCEDURAL HISTORY**

In this case, NEBF filed suit against Trademark under the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(e), to recover delinquent pension fund contributions and related relief. ECF No. 1. Trademark was personally served with the Complaint and summons, *see* ECF No. 4, but it did not file an answer or responsive pleading. On August 11, 2021, NEBF moved for the Clerk's entry of default (ECF No. 8), and the Clerk

entered default against Trademark on the same day (ECF No. 10). On September 29, 2021, NEBF filed the Motion, to which Trademark has not responded.[1]

## II. LEGAL ANALYSIS

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations in the complaint regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may

---

[1] The Court has subject matter jurisdiction over this case pursuant to Section 502 of ERISA, 29 U.S.C. § 1132 and 1451(c). 28 U.S.C. § 1331. Venue is proper under 29 U.S.C. § 1132(e)(2) because NEBF is administered in this district. *See Nat'l Elec. Benefit Fund v. Code Eng'g Servs., Inc.*, No. TDC-16-1685, 2016 WL 6926404, at *2 (D. Md. Nov. 28, 2016).

enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

    **B.**    **Liability**

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

In the Complaint, NEBF alleges that it is a multiemployer employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2). ECF No. 1 ¶ 4. Trademark is an employer that has agreed to participate in the NEBF pursuant to a collective bargaining agreement with a labor union. *Id.* ¶ 6. Specifically, on or about November 7, 1995, a representative of Trademark signed a Letter of Assent in which Trademark agreed to "comply with, and be bound by, all of the

provisions contained" in an Inside Electrical Construction labor agreement between the Montana Chapter, NECA, Inc. and Local Union 233, IBEW, as well as "subsequent approved labor agreements."[2] ECF No. 14-2 at 6. By signing the Letter of Assent and agreeing to "comply with, and be bound by," the terms of the relevant collective bargaining agreement, Trademark agreed to the following provision, which is contained in Section 6.04 of the collective bargaining agreement:

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund (NEBF) as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employers will forward monies to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
>
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

ECF No. 14-2 at 13. This term is consistent with Article 6 of the Restated Employees Benefit Agreement and Trust for the NEBF ("Trust Agreement"), which is referenced in the collective bargaining agreement.[3] ECF No. 14-2 at 19.

Pursuant to the collective bargaining agreement and the Trust Agreement, Trademark is required to submit contributions to NEBF on behalf of Trademark's covered employees. ECF

---

[2] NECA stands for the National Electrical Contractors Association. ECF No. 1. ¶ 4. IBEW stands for the International Brotherhood of Electrical Workers. *Id.*

[3] In the Affidavit of Brian Killian, Contribution Compliance Manager of the NEBF, which is attached to the Motion, Mr. Killian states that Trademark "is also obligated to contribute to NEBF by virtue of a Project Agreement Between Trademark Electric of Butte, Montana and Local Union #144 of the IBEW." ECF No. 14-2 at 2, 27-29.

Nos 14-2 at 13, 19. In general, under these agreements, Trademark is required to pay NEBF an amount equal to 3% of the gross labor payroll for Trademark's covered employees on a monthly basis. *Id.* Notwithstanding its obligations, Trademark failed to make the contributions to NEBF for its covered employees that are required by the collective bargaining agreement and the Trust Agreement. ECF No. 1 ¶¶ 8-9. In its Complaint, NEBF alleged that Trademark owed $13,990.97 in delinquent contributions in connection with work performed by its covered employees for the period of September 2019 through December 2020. *Id.* ¶ 9. According to Mr. Killian's Affidavit, Trademark remitted payment to NEBF in the amount of $2,604.89 after the Complaint was filed. ECF No. 14-2 at 2. Trademark still owes NEBF delinquent contributions in the amount of $11,386.08 for the period of September 2019 through December 2020.[4] *Id.*

Accepting as true the unchallenged allegations of the Complaint, along with the evidence that NEBF submitted in connection with its Motion to show that Trademark was bound by the terms of the collective bargaining agreement and the Trust Agreement, NEBF has established Trademark's liability for failure to pay the contributions required by the collective bargaining agreement and the Trust Agreement.

### C. Damages

Having determined that NEBF has established Trademark's liability, it is now appropriate to determine the damages to which NEBF is entitled. The damages NEBF seeks in its Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3

---

[4] Mr. Killian's Affidavit mistakenly states that Trademark owes $11,836.08 in delinquent contributions. ECF No. 14-2 at 3. It is clear that this is a typo that resulted from transposing the numbers for the correct amount ($11,386.08), which appears on the NEBF Delinquency Report attached to the Motion. *Id.* at 31.

(D. Md. Apr. 16, 2010). Here, NEBF has provided sufficient evidence to support its claim for damages in the amount of $18,080.64.

In support of its claim for damages, NEBF relies on Mr. Killian's Affidavit. ECF No. 14-2 at 1-4. Under the Trust Agreement, which Mr. Killian incorporates into the Affidavit, NEBF may recover delinquent contributions, interest on delinquent contributions at a rate of ten percent per annum, liquidated damages in the amount of twenty percent of the delinquent contributions, audit fees, and attorney's fees and costs incurred in collecting delinquent contributions. As discussed above, these damages are allowed under ERISA. 29 U.S.C. § 1132(g).

Based on Trademark's self-reporting to NEBF for the period of September 2019 through December 2020, *see* ECF No. 1 ¶ 9, Mr. Killian states that Trademark was delinquent in its contributions in the amount of $13,990.97. ECF No. 14-2 at 2. Trademark made a late payment of $2,604.89 toward its delinquent contributions, leaving $11,386.08 in outstanding delinquent contributions. *Id.* at 3. After making this payment, Trademark has not responded to NEBF's demands for payment of the outstanding contributions. *Id.* I recommend that the Court award $11,386.08 to NEBF for Trademark's outstanding delinquent contributions.

NEBF also seeks prejudgment interest on the delinquent contributions in the amount of $1,685.37, the calculation of which is set forth at ECF No. 14-2 at 31. *See* ECF No. 14-2 at 3, 24. In addition, NEBF seeks liquidated damages for Trademark's delinquent contributions in the amount of $2,798.19, which is twenty percent of the delinquent contributions. ECF No. 14-2 at 3, 24. NEBF's requests for an award of prejudgment interest and liquidated damages are supported by the evidence that NEBF has submitted. I recommend that the Court award NEBF $1,685.37 for prejudgment interest and $2,798.19 for liquidated damages.

NEBF also seeks an award of attorney's fees and costs, which are available in ERISA cases. 29 U.S.C. §1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475 per hour. Paralegals and law clerks may reasonably bill $95-150 per hour. These rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, NEBF has been represented by Jennifer Hawkins ("Ms. Hawkins") of the law firm Potts-Dupre, Hawkins & Kramer, Chrtd. ECF No. 14-1. Ms. Hawkins has been a licensed attorney for more than 26 years and has been responsible for NEBF's ERISA collections proceedings at her law firm since 1996. *Id.* ¶ 3. Ms. Hawkins charged a rate of $379.00 per hour in this case. *Id.* ¶ 5. This rate is within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. Ms. Hawkins' legal assistant, Caroline Lippie

7

("Ms. Lippie"), charged a rate of $139.00 per hour. This rate is also within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. I further find that the time that Ms. Hawkins and Ms. Lippie spent working on this case, which is detailed in Ms. Hawkins' Declaration, *id.* ¶ 6, is reasonable. Finally, NEBF incurred a total of $552.00 in costs, which includes the $402.00 fee for filing the complaint and a $150.00 service fee. *Id.* ¶ 9. I recommend that the Court award NEBF attorney's fees in the amount of $1,659.00 and costs in the amount of $552.00.

In total, I recommend that $18,080.64 in damages be awarded to NEBF against Trademark. This amount includes $11,386.08 in delinquent contributions; $1,685.37 in interest; $2,798.19 in liquidated damages; $1,659 in attorney's fees; and $552.00 in costs. I also recommend that NEBF be awarded any additional fees and costs incurred in connection with the enforcement of the judgment, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## III. CONCLUSION

In sum, I recommend that the Court:

1. Grant the Trustees of the National Electrical Benefit Fund's Motion for Default Judgment (ECF No. 14);

2. Enter judgment in favor of the Trustees of the National Electrical Benefit Fund against Trademark Electric, Inc. in the amount of $18,080.64, plus post-judgment interest to accrue at the legal rate;

I also direct the Clerk to mail a copy of this Report and Recommendation to Trademark Electric, Inc.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

<u>November 5, 2021</u>     /s/
Date                Timothy J. Sullivan
                    United States Magistrate Judge